IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


COREY HARGROW,                    :        CIVIL NO. 1:CV-06-0683
                 Petitioner       :
                                  :          (Chief Judge Kane)
           v.                     :
                                  :
JONATHAN MINOR,                   :
                 Respondent       :


## MEMORANDUM and ORDER

Petitioner Corey Hargrow is a District of Columbia offender currently confined at the United States Penitentiary at Allenwood ("USP-Allenwood"), Pennsylvania.  He filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging actions of the United States Parole Commission ("USPC").  He contends that in considering him for parole, the USPC violated both the Ex Post Facto clause and the Due Process clause of the United States Constitution.  Respondent is Jonathan Minor, warden of USP-Allenwood.   As relief, he requests an immediate parole hearing in accordance with the regulations in place when he committed his D.C. code crimes.  For the reasons that follow, the petition will be denied.

I.      **Background**

On July 16, 1990, Petitioner was sentenced to 48 years imprisonment by the District of Columbia Superior Court for assault with intent to kill while armed, and carrying a pistol without a license.  (Doc. 9, Ex. 1.)  On September 14, 2000, the USPC conducted an initial parole hearing.[1]  At

---

[1] On August 5, 1998, "the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia code" was transferred to the United States Parole Commission.  See National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Public Law No. 105-33, § 11231(a)(1), 111 Stat. 712, 745.

the hearing the parole guidelines found at 28 C.F.R. § 2.80 (2000) were applied, and Petitioner

assigned a base point score of 7 plus 1 point for negative institutional behavior and minus 1 point for

"ordinary program achievement," yielding a total point score of 7 points.  This score indicated that

parole should be denied and a rehearing scheduled.  Accordingly, parole was denied.  (Id., Ex. 3.)

Although the guidelines indicated that a rehearing should be scheduled in 18-24 months, the USPC

departed from this range, ordering a rehearing in October of 2005, following service of 60 months.

The following reasons were provided for the departure:

> You are a more serious risk than indicated by your Base Point Score in
> that the attempted murder you committed was the attempted
> assassination of two victims simultaneously, indicating that you have
> the characteristics of a professional killer.  You are therefore a
> significantly more dangerous individual than the ordinary offender
> with your Base Point Score.

(Id.)

Petitioner received a reconsideration hearing on October 25, 2005.  (Doc. 9, Ex. 4.)  At this

hearing, the USPC applied amended and supplemented regulations which called for the calculation

of a "Total Guideline Range" and the granting of a presumptive parole date up to 36 months from

the hearing date.[2]  Petitioner's base point score of 7 points from the prior hearing was carried over

and correlated with a base guideline range of 54-72 months.  Added to this range was 125-125

months to parole eligibility date, as well as 18-24 months for disciplinary infractions before the prior

hearing.  Based upon the foregoing, Petitioner had a total range of 197-221 months to be served

prior to release on parole.  (Id., Ex. 5.)  The USPC also considered Petitioner's program achievement

---

[2]  This was the method applied as opposed to the former guidelines determination of whether
immediate parole was or was not warranted, with the scheduling of a rehearing date if parole was
denied.

before and since the prior hearing and found it not to be "superior."  A range of 0-0 months was also assessed for disciplinary conduct since Petitioner's prior hearing.  It was ordered that Petitioner be released on parole after service of 220 months - - a presumptive parole date of June 5, 2008, conditioned upon good behavior while in custody.  The USPC's decision was within the guideline range.

In the instant habeas action, Petitioner raises the following arguments: (1) the USPC violated the Ex Post Facto clause of the United States Constitution when it retroactively applied new guidelines in his case rather than District of Columbia parole guidelines in effect when he committed his offense; (2) the USPC's exercise of discretion under the new guidelines focus on punishment whereas the District of Columbia's former regulations considered evidence of post-incarceration rehabilitation into the parole determination; and (3) the USPC acted arbitrarily when it departed from the rehearing guideline after his first hearing.

## II.   Discussion

### A.      Ex Post Facto Violations

The Court first rejects any contention by Petitioner that the mere transfer of his case to the Parole Commission effects an ex post facto violation.  Petitioner was sentenced in the D.C. Superior Court in July of 1990.  His initial parole hearing was conducted on September 14, 2000.  Effective August 5, 1998, pursuant to the provisions of the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Public Law No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, jurisdiction to make parole decisions for D.C. Code offenders was transferred to the United States Parole Commission.  Any contention by Petitioner that he should not fall under the jurisdiction of the USPC because he was originally held under the D.C. Board's

authority is unfounded. Even prior to the enactment of the Revitalization Act, Petitioner could have been subject to the jurisdiction of the Commission. As a District of Columbia offender, he could have been transferred to a federal facility at any time. The Commission has always had the "same authority and power" and "jurisdiction" as the D.C. Board over District of Columbia violators transferred to federal facilities. Morgan v. District of Columbia, 618 F. Supp. 754, 755-56 (D.D.C. 1985). Thus, any assertion is incorrect that the transfer of parole decision authority from the D.C. Board to the Commission via the Revitalization Act violates his ex post facto rights by subjecting him to an alternate decision maker.

Next, the Court addresses Petitioner's major ex post facto claim, that the USPC's application of its parole guidelines, rather than those of the D.C. Board, unconstitutionally altered the conditions affecting his parole eligibility resulting in his "lingering in prison longer." Petitioner argues that the Commission retroactively applied the new guideline system which allegedly focuses exclusively on pre-incarceration factors, and does not take into account post-incarceration achievements.

The guidelines of the D.C. Board ("1987 guidelines") in effect from 1987 to 1998 required calculation of a "Total Point Score" based on the inmate's Salient Factor Score and additional risk points, the total number indicating the risk level presented by the inmate. A Total Point Score of 2 or less at the initial hearing ordinarily meant that parole would be granted. If the Total Point Score was 3 or more, parole would be denied and the inmate continued for a rehearing. At the rehearing, a score of 3 would indicate that parole should be granted. Because points were subtracted from the Total Point Score at rehearings for positive prison programming, an inmate with a high Total Point Score could work his score down after one or more rehearings. In cases where parole was denied, the ordinary rehearing would be in one (1) year. See Ellis v. District of Columbia, 84 F.3d 1413,

4

14150-17 (D.C. Cir. 1996).

The D.C. Board had discretion to override the guidelines and deny parole notwithstanding a favorable Total Pont Score and to order a longer period of time to a rehearing than one year.  As explained in Ellis, ". . . under the regulations, a prisoner with a low total point score shall be granted parole unless the Board, in the exercise of its discretion, believes there is some other reason for not granting parole." Ellis, 84 F.3d at 1419.

In transferring parole authority from the D.C. Board to the USPC, the Revitalization Act also gave the Parole Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons.  See D.D. Code  § 24-1231(a)(1) and (c)(1999), recodified as D.C. Code § 24-131(a)(1) and (c)(2001). Pursuant to this authority, in 1998 the Commission adopted a revised version of the DC parole regulations that had been in effect since 1987.  See 28 C.F.R. § 2.70 (1999).  In the 1998 revisions, the Commission added to the Total Point Score some additional points to reflect the degree of violence involved in the current offense and the number of violent crimes on the inmate's prior record.  Also, the annual rehearing guideline was replaced with specific guideline ranges to be followed in the event of a parole denial.  The Commission maintained the D.C. Board's basic guideline for grants and denials of reparole and the D.C. Board's risk-based measure of determining an inmate's suitability for parole.

In 2000, the USPC revised the guidelines again wherein the parole policies set forth in the 1998 guidelines were basically maintained, but the rehearing ranges applicable to each inmate were converted into a "Total Guideline Range."  See 28 C.F.R. § 2.80.   This range is based on the point score calculations as set forth in the 1998 guidelines, plus the number of rehearings an inmate would

normally expect if he maintained good behavior.  Stated another way, the time required by the

inmate's minimum term is added to the applicable rehearing range (determined by the inmate's Total

Point Score), plus an additional range of time for any disciplinary infractions. Further, a range of

months can be deducted for superior program achievement.

The Ex Post Facto Clause prohibits "laws that retroactively alter the definition of crimes or

increase the punishment for criminal acts."[3]  California Dept. of Corrections v. Morales, 514 U.S.

499, 504 (1995).  The two-prong test used to determine whether a law violates the Ex Post Facto

Clause is whether it (1) involves a change in law which has a retrospective effect and (2) whether the

law creates a sufficient risk of increasing the measure of punishment attached to the covered crimes.

Richardson v. Pa. Board of Probation and Parole, 423 F.3d 282, 287-88 (3d Cir. 2005); Morales, 514

U.S. at 509.  "[A] 'speculative or attenuated possibility ... of increasing the measure of punishment'

is not enough."  Richardson, 423 F.3d at 288 (citing Morales, 514 U.S. at 509.  The prisoner carries

the ultimate burden of establishing that the measure of punishment itself has changed and the law, as

applied to his own sentence, recreates a significant risk of increasing his punishment.  Id. (citing

Garner v. Jones, 529 U.S. 244, 255 (2000); Morales, 514 U.S. at 510 n.6).

Respondent does not contest that the federal parole guidelines were applied retrospectively in

Petitioner's situation, and as such, Petitioner satisfies the first prong of the ex post facto test.  The

second prong, however, is where Petitioner's claim fails.  Petitioner fails to produce any evidence

---

[3] Thus, the initial inquiry is whether the parole guidelines at issue are "laws" for ex post facto purposes.  The Third Circuit Court of Appeals addressed this question in U.S. ex rel. Forman v. McCall, 709 F.2d 852 (3d Cir. 1983) holding that the parole guidelines could constitute "laws" within the meaning of the Ex Post Facto Clause if they are applied without substantial flexibility.  Id. at 862.  This inquiry involves a factual determination by the district court.  For the sake of judicial efficiency, the Court will assume arguendo the guidelines in question are laws for ex post facto purposes.

that the change in the federal parole guidelines negatively affected his parole status.  Petitioner argues that the Parole Commission disadvantaged him by ordering a rehearing after 60 months rather than the prior guidelines range of 18-24 months.  However, there is no question that in deciding parole cases the D.C. Board could and did depart from its rehearing guidelines, just as the USPC did in Petitioner's initial hearing.  See Hall v. Henderson, 672 A.2d 1047, 1054 (D.C. 1996)(rehearing date three years outside of guideline range imposed based on inmate's negative institutional behavior and other factors).  In amending the original D.C. Parole Board's guidelines, the USPC essentially adopted the same point scoring system used by the D.C. Board, incorporating factors upon which the D.C. Board relied to upwardly depart from its guidelines.  The changes basically codified unofficial discretionary factors that had been previously utilized by the D.C. Board to substantiate upward departures. Thus, while discretionary factors affected Petitioner's parole eligibility under the federal parole guidelines, they would have similarly affected his parole eligibility had the D.C. Parole Board Guidelines of 1978 been applied during his initial parole hearing.

To the extent Petitioner challenges the USPC's departure from the rehearing guideline range of 18-24 months in his 2005 hearing, setting a rehearing in July of 2008, after 31 months, Petitioner fails to understand that a rehearing was not set.  Rather, the Commission ordered a presumptive parole release on July 5, 2008, assuming good behavior.  Any claim by Petitioner that the Commission improperly went outside the guidelines is not supported by the record, as Petitioner's release on parole (as opposed to rehearing) after service of 220 months was clearly within the guideline range of 197 -221 months. (Doc. 9, Ex. 4.)

Petitioner further argues that the federal parole regulations, unlike the D.C. Board's former

regulations, are primarily concerned with punishment and do not factor evidence of post-incarceration rehabilitation into parole determinations.  As such, he contends that this difference creates a risk that he will linger in prison longer than was reasonably anticipated when he was sentenced.  This argument is without merit.  The Third Circuit Court of Appeals has stated that "the new federal regulations adopted by the Commission mirrored the rehabilitative focus of the Board's former regulations covering parole."  Fletcher v. Reilly, 433 F.3d 867, 869 (3d Cir. 2006).  Further, a simple review of the Commission's 2000 revised guidelines reveals that they provide for the assessment of guidelines for disciplinary infractions and for superior program achievement.[4] Specifically, 28 C.F.R. § 2.80(j) provides for the guideline range for disciplinary infractions and § 2.80(k) discusses guidelines for superior program achievement. Accordingly, Petitioner's argument is without merit.

      B.      Abuse of Discretion by Parole Commission

Petitioner argues that the USPC's departure from the rehearing guidelines after his initial hearing in September of 2000 was arbitrary because he never killed anyone.  He also challenges the finding that he was more dangerous than the "ordinary offender," a term Petitioner claims is undefined and therefore improper.

The function of judicial review on a petition for writ of habeas corpus in the parole context is to determine whether the Commission abused its discretion.  Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000).  Review is limited to whether there is a rational basis in the record for the conclusions embodied in the Parole Commission's statement of reasons, which should include

---

[4] As previously discussed, the base point score incorporates ordinary program achievement as such is assumed by the Parole Commission.

whether the criteria, appropriate, rational and consistent with its enabling statutes, has been followed so that its decision is not arbitrary and capricious, nor based on impermissible considerations. Id. (citing Zannino v. Arnold, 531 F.2d 687, 690-91 (3d Cir. 1976)).  The court is not empowered to substitute its judgment for that of the Parole Commission unless the Commission's exercise of discretion represents an egregious departure from rational decision-making.  See Butler v. U.S. Parole Commission, 570 F. Supp. 67, 77 (M.D. Pa. 1983).

In the instant case, Petitioner shot two individuals in a parked car, one in the head and the other in the back, hand and head.  His reason for doing so was because the victims had shot his friend.  The USPC's reasons for departing from the rehearing guidelines focused on the fact that Petitioner had a previous history of assaultive behavior with a dangerous weapon and that two victims were shot during the course of the offense, with the intent to take their lives.  The attempted murder was viewed as the attempted assassination of two victims simultaneously, indicating that Petitioner had the characteristics of a professional killer.  He was seen as significantly more dangerous than the ordinary offender.   Petitioner conceded that he had shot the two victims to avenge the shooting by the two of a friend of Petitioner's.  A rationale basis in the record exists for the conclusions set forth by the Commission in their statement of reasons for exceeding the guidelines.  There is no indication Petitioner was involved in the original dispute or that there existed any threat to Petitioner from the victims.  Rather, he merely shot the victims to avenge the shooting of his friend.  It was not arbitrary for the Parole Commission to liken Petitioner's actions to ones more dangerous than the ordinary offender and like an assassination attempt, as both victims were shot in the head one after the other.  This Court will not disturb the findings of the Commission.  For all of the foregoing reasons, the petition for writ of habeas corpus will be denied.

III.    Order

   **AND NOW**, this 16th   day of July, 2007, upon consideration of the petition for writ of

habeas corpus, **IT IS HEREBY ORDERED THAT:**

   1.      The petition for writ of habeas corpus is **DENIED**.

   2.      The Clerk of Court is directed to **CLOSE** this matter.

s/ Yvette Kane
YVETTE KANE, Chief Judge
United States District Judge